SAM COOK v. JAMES C. LAWSON

No. 6829SC303

(Filed 20 November 1968)

**1. Frauds, Statute of § 6—   contract to share profits from purchase and sale of realty**

An oral contract to divide the profits from the purchase and sale of real estate is not within the statute of frauds.

**2. Contracts § 27—   breach of contract — nonsuit — damages**

Where plaintiff's evidence tends to show the existence of a contract between the parties and that defendant performed an act rendering it impossible for plaintiff to perform his part of the agreement, or otherwise makes out a *prima facie* case of breach of contract, a motion to nonsuit is properly denied irrespective of the evidence of damage, since breach of contract entitles the injured party to nominal damages at least.

**3. Contracts § 21—   anticipatory breach**

Anticipatory breach of contract is a breach committed before there is a present duty of performance, and is the outcome of words evincing intention to refuse performance in the future.

**4. Contracts § 21—   anticipatory breach**

The theory of anticipatory breach of contract avails in North Carolina.

**5. Contracts §§ 21, 27— anticipatory breach — sufficiency of evidence**

In an action for breach of an oral contract whereby plaintiff and defendant agreed to purchase land for the purpose of reselling it and dividing the profits, plaintiff's evidence of a statement by defendant that "I bought the land and paid for it; you ain't got no more to do with it" is sufficient to show an anticipatory breach of the contract by defendant.

**6. Contracts § 29— breach of contract to divide profits from sale of realty — measure of damages**

The measure of damages for breach of a contract whereby plaintiff and defendant agreed to purchase and sell real property and divide the profits equally is one-half the profits which would have been made upon a resale of the property in the exercise of reasonable care and judgment.

APPEAL by plaintiff from *Jackson, J.,* at the 23 April 1968 Session of RUTHERFORD Superior Court.

In his complaint, plaintiff alleged that on or about 1 June 1966 he and the defendant, both being residents of Rutherford County, N. C., orally agreed to buy and sell land together, "going 50-50 on it," and sharing any profit equally. He further alleged acts by both parties in accord with the agreement, including negotiation, the taking of an option, and subsequent purchase of certain property near Chesnee, South Carolina; that the defendant secretly took title in his own name, subsequently informing the plaintiff that plaintiff had nothing to do with it. Plaintiff prayed for damages in the amount of one-half the difference between the fair market value and the purchase price of the land.

The evidence favorable to plaintiff tended to show: Plaintiff was engaged in the real estate business in Forest City, N. C. Defendant came to plaintiff's home on 1 June 1966, and as a result of a conversation, the parties entered into a parol agreement to buy and sell land, sharing the profits or losses equally. After considerable traveling and looking, the parties located certain land belonging to a Dr. Reed near Chesnee, South Carolina. Since Plaintiff was known as a realtor, it was felt the defendant alone might obtain a better price, as the owner was likely to assume the land was desired for farming. While plaintiff waited in the car, defendant obtained an option to purchase the property for $25,000, paying $1,000 for the option. Plaintiff offered to pay half of the $1,000, but defendant said settlement could be made when the property was resold. On inquiry by the defendant, plaintiff assured defendant that he would pay the $500 to defendant if no profit was made on resale. Plaintiff advertised the property for several weeks and placed signs upon it, but the property was not sold. The parties then decided to take sealed bids for the timber on the land, and plaintiff solicited bids

from various timber dealers. On opening the bids, defendant failed to disclose the amounts of the bids to plaintiff. When plaintiff asked about it, defendant replied: "Why do you care? I bought the land and paid for it; you ain't got no more to do with it." Plaintiff's evidence also indicated that the defendant had represented joint ownership of the property both to the plaintiff and to third persons. Plaintiff then offered his own expert opinion of the fair market value of the property at the time of the repudiation by defendant.

At the close of the plaintiff's evidence, the court granted defendant's motion for judgment as of nonsuit. Plaintiff appealed.

*Hamrick & Hamrick by J. Nat Hamrick for plaintiff appellant.*

*M. Leonard Lowe for defendant appellee.*

BRITT, J.

Plaintiff assigns as error the granting of defendant's motion for nonsuit. Two questions are presented by this appeal: Was plaintiff entitled to have the jury pass upon his action for breach of contract; if so, what was the measure of damages?

[1] It is clear that in North Carolina an oral contract to divide the profits from the purchase and sale of real estate is not within the statute of frauds. *Newby v. Realty Co.*, 180 N.C. 51, 103 S.E. 909, 182 N.C. 34, 108 S.E. 323; *Brogden v. Gibson*, 165 N.C. 16, 80 S.E. 966.

In *Newby v. Realty Co., supra,* plaintiffs alleged and offered evidence tending to show that they entered into an oral contract with defendants on 6 December 1918 under which it was agreed that the subject property would be bought by defendants and held for resale for the joint account of both plaintiffs and defendants, with the parties sharing equally in all profits; that all money necessary for the purchase of the land (and the operation of the farm during the interim) was to be furnished by the defendants. The case was heard by our Supreme Court twice, and on the second appeal the question of the statute of frauds was considered. In holding that the agreement sued on did not come within the statute of frauds, the court declared: "* * * we are of the opinion that it is not within the language or spirit of the statute of frauds, which provides that all contracts to sell or convey lands, or any interest in or concerning them, shall be void, unless the contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully

authorized. * * * There is no such contract in this case as is described in the statute. The plaintiffs have not contracted to sell or convey any land to the defendants, nor have the defendants agreed to buy and pay for the same, nor *vice versa.*" Further on in the opinion and referring to the contract sued upon, the court said: "In the majority view of the courts such an agreement for the purchase of land for the purpose of resale is regarded, not as a contract to sell or convey lands, but as a contract of partnership or a joint venture, as the case may be, which contemplates, not the transfer of any interest in lands from one party to the contract to the other, but only a division of profits upon a resale of the lands."

Plaintiff has offered evidence sufficient, if believed, to support a finding of the existence of a parol contract to buy and sell realty and divide the profits, with a subsequent modification relating to the sale of the timber separate from the land itself.

We next consider whether the plaintiff has presented facts sufficient to establish a breach of the contract.

[2]    "Where plaintiff's evidence tends to show the existence of a contract between the parties and that defendant performed an act rendering it impossible for plaintiff to perform his part of the agreement, or otherwise makes out a prima facie case of breach of contract, a motion to nonsuit is properly denied irrespective of the evidence of damage, since breach of contract entitles the injured party to nominal damages at least." 2 Strong, N. C. Index 2d, Contracts, § 27, p. 337.

[3, 5]    Anticipatory breach is defined as: "A breach committed before there is a present duty of performance, and is the outcome of words evincing intention to refuse performance in the future." Black's Law Dictionary, 4th Ed.; *McJunkin Corp. v. North Carolina Natural Gas Corp.*, 300 F. 2d 794. The statement of the defendant that "I bought the land and paid for it; you ain't got no more to do with it" clearly evinces an intention to refuse to share the profits from sale of the timber or land.

[4]    That this theory avails in North Carolina is supported by the case of *Tillis v. Cotton Mills and Cotton Mills v. Tillis*, 251 N.C. 359, 111 S.E. 2d 606, where the court said: "At the close of the evidence Calvine moved for judgment of involuntary nonsuit. The court properly overruled the motion. Parties to an executory contract for the performance of some act or services in the future impliedly promise not to do anything to the prejudice of the other inconsistent with their contractual relations and, if one party to the

contract renounces it, the other may treat renunciation as a breach and sue for his damages at once, provided the renunciation covers the entire performance to which the contract binds the promisor. *Pappas v. Crist,* 223 N.C. 265, 268, 25 S.E. 2d 850; *Edwards v. Proctor; Proctor v. Edwards,* 173 N.C. 41, 43-44, 91 S.E. 584. Tillis gave testimony of a contract, breach thereof, and damages. 'In a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least.' *Bowen v. Bank,* 209 N.C. 140, 144, 183 S.E. 266." See also 2 Strong, N. C. Index 2d, Contracts, § 21, p. 329, and 4 Corbin on Contracts, Anticipatory Repudiation, § 970, p. 896.

[5]    We hold that plaintiff was entitled to have the jury pass upon his allegations and evidence of breach of contract.

As to the measure of damages, plaintiff contends that he was entitled to prove his damage by showing the difference between the purchase price and the fair market value at the time defendant took title in himself and repudiated his agreement with plaintiff. We do not agree with this contention.

The rule which plaintiff contends for was disapproved in *Newby v. Realty Co.,* 180 N.C. 51, 103 S.E. 909. Instead, the court applied the following rule: "* * * the plaintiffs are entitled to be put in the same position they would have been in if the contract had been performed, and to recover only what has been lost by nonperformance, and tested by this principle instead of being entitled to the difference between the option price and the market value of the land on 1 January, 1919, they ought to recover, if they sustain their contentions, one-half the profits which would have been made upon a resale of the property in the exercise of reasonable care and judgment." This measure has been approved in subsequent cases and should be employed in the case at hand. *Service Co. v. Sales Co.,* 259 N.C. 400, 131 S.E. 2d 9; *Bishop v. DuBose,* 252 N.C. 158, 113 S.E. 2d 309; *Perkins v. Langdon,* 237 N.C. 159, 74 S.E. 2d 634; *Troitino v. Goodman,* 225 N.C. 406, 35 S.E. 2d 277.

The granting of defendant's motion for judgment as of nonsuit was error, as plaintiff was entitled to have the jury pass upon his action for breach of contract, if only for nominal damages.

The judgment of the superior court is

Reversed.

BROCK and PARKER, JJ., concur.